ADVANCED BUSINESS COMMUNICA-TIONS, INC., and John W. Israel, Appellants,

v.

John P. MYERS, and Merton F. Bernabi, Appellees.

No. 05–84–00037–CV.

Court of Appeals of Texas, Dallas.

June 10, 1985.

Michael V. Powell, Raymond E. LaDriere, II, Rain, Harrell, Emery, Young & Doke, Dallas, for appellants.

Charles A. Gall, Thomas A. Albright, Jenkens & Gilchrist, Dallas, for appellees.

Before GUITTARD C.J., and CARVER and SHUMPERT, JJ.

GUITTARD, Chief Justice.

This suit was brought by a corporation and its principal stockholder against two former officers and stockholders. Plaintiffs alleged unauthorized withdrawals by defendants of corporate funds and fraudulent representations and breaches of warranty in connection with the formal agreement by which defendants sold certain stock to the individual plaintiff. Defendants moved for summary judgment on the ground that the corporation's claim is barred under the authority of *Bangor Punta Operations, Inc. v. Bangor & Aroostook Ry. Co.*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974), which holds that a corporation cannot recover from its former majority shareholder for mismanagement of the corporate affairs before the present majority stockholder acquired its stock. Defendants also asserted in their motion that the individual plaintiff cannot recover because he bought his stock in reliance on correct information and, therefore, sustained no damages as a matter of law. The trial court rendered summary judgment for defendants, and plaintiffs appeal, contending that the *Bangor Punta* doctrine does not apply and that the evidence fails to show that the individual plaintiff sustained no damages from the breach of warranty.

We hold that *Bangor Punta* applies, but only to the extent of the stock sold by defendants, and that the corporation may recover on behalf of the owners of the remaining shares. We also hold that the individual plaintiff may recover for breach of warranty with respect to the stock sold

to him. Accordingly, we reverse the summary judgment and remand the cause for trial.

*Facts*

Before October 1981, plaintiff John W. Israel and defendant James P. Myers were the principal shareholders of plaintiff Advanced Business Communications, Inc. ("ABC"). Israel was chairman of the board and owned 48% of the stock. Defendant Myers was president. Defendant Myers, defendant Morton F. Bernabi, and Benjamin Laws owned 50% of the stock.[1] The parties disagreed concerning the affairs of the corporation, and litigation ensued. In settlement of this litigation, the parties entered into a formal agreement dated October 23, 1981, whereby Myers, Bernabi, and Laws sold all of their 50% stock interest to Israel and Italtel S.I.T., an outside party, for $200,000.[2] The 25% interest sold to Italtel was later acquired by ABC and has since been held as treasury stock, so that Israel now owns approximately 99% of the outstanding shares.

Besides the stock sale, the settlement agreement contains various releases, warranties, and other provisions. Myers, Bernabi, and Laws agreed to resign as officers, directors, and employees of ABC, to surrender all corporate records in their possession, and to disclose all encrypting passwords known to them applicable to any computer at ABC. The warranties now alleged to have been breached include the following:

10. Myers, Bernabi and Laws each hereby warrants, represents and covenants to Israel, and this Agreement is made in reliance on the following, each of which is deemed to be a separate covenant, representation and warranty, that at the time of this Agreement and as of the Closing:

\*    \*    \*    \*    \*    \*

---

**1.** Laws, a minor stockholder, is not a party to this suit. We treat his stock as included in that sold by Myers and Bernabi.

**2.** The agreement names Israel as sole purchaser, but it is undisputed that Italtel advanced one-half of the purchase money and took title to one-half of the stock sold.

(c) Within the six (6) month period immediately preceding the Closing, ABC has engaged in no transactions with Myers, Bernabi or Laws, or the affiliates of any of them, or any member of any of their families or any organization with or in which any of them or any family member is associated or has a direct or indirect interest, except for the payment of salaries and reimbursement of reasonable business expenses, all of which have been in the ordinary course of business of ABC.

\*   \*   \*   \*   \*   \*

(e) Neither Myers, Bernabi nor Laws has caused ABC to engage in any transaction affecting ABC's business or properties not in the ordinary course of business, nor has any of them caused ABC to suffer any extraordinary loss.

ABC and Israel allege in their petition that shortly before this agreement was signed, defendants Myers and Bernabi caused ABC to make interest-free loans and unauthorized payments to them personally and to entities controlled by them, amounting to $80,000. Since the motion for summary judgment does not controvert this allegation, we accept it as true for the purpose of this appeal. The petition asserts causes of action against Myers and Bernabi for (1) actual fraud, (2) breach of contract, (3) breach of warranty, (4) breach of fiduciary duty, and (5) fraud in the sale of stock.

### ABC's Claim

Only Myers has filed a brief in support of the trial court's judgment. Myers contends that summary judgment against ABC was proper both because the *Bangor Punta* doctrine applies to the facts of this case and because ABC, having retained the benefits of the settlement and never having offered to rescind the agreement and return the consideration, cannot now escape the effect of that part of the agreement by which ABC and Israel released all claims against Myers, Bernabi, and Laws.

In *Bangor Punta* the Supreme Court held that a corporation cannot recover damages for corporate mismanagement if the present holders of all or substantially all of the shares acquired their shares for a fair price after occurrence of the wrongful conduct on which the suit is based. The rationale of this decision is that, if the new stockholders have acquired their shares from the alleged wrongdoers and have paid the reasonable value of their shares after considering the injury to the corporation from the mismanagement, to allow the corporation to recover would, in effect, allow the new stockholders to gain a windfall by recouping their purchase price. To prevent this inequitable result, the Court disregarded the separate existence of the corporation and held that recovery by the corporation, as well as by the stockholders, was barred. 417 U.S. at 711–13, 94 S.Ct. at 2583–84. Obviously, this rule should not be applied to the injury of the corporation's creditors, but no rights of creditors are alleged to be involved here.

ABC contends that the *Bangor Punta* rationale does not apply here because Israel, its principal stockholder, was not a new stockholder, as was the purchaser in *Bangor Punta*, but owned 48% of the stock at the time of defendants' unauthorized transactions and, therefore, would not be barred in a stockholder's action from claiming injury from the wrongful acts alleged. Alternatively, ABC argues that *Bangor Punta* should be applied only pro rata to the "tainted shares" acquired by Israel from defendants.

We conclude that prior ownership of other shares does not exclude application of the *Bangor Punta* doctrine to the extent of the shares acquired from the wrongdoers. If we disregard the separate existence of the corporation in order to do exact justice between former and present stockholders, to bar recovery altogether because only 50% of the stock was sold would allow the wrongdoers to keep their ill-gotten gains to the detriment of present stockholders who owned their shares at the time of the wrongdoing. On the other hand, to permit recovery by the corporation for the

full amount of the unauthorized withdrawals would allow the purchasers of the stock a windfall to the extent of the shares acquired from the wrongdoers, who were misappropriating their own funds to the extent of their 50% stock ownership. Since *Bangor Punta* is an equitable doctrine designed to prevent unjust enrichment, we conclude that it should be applied to the extent necessary to prevent unjust enrichment, but no further.

■ We note that in *Home Fire Insurance Co. v. Barber,* 67 Neb. 644, 93 N.W. 1024, 1035–36 (1903), one of the authorities on which the Supreme Court relied in *Bangor Punta,* the Supreme Court of Nebraska, while denying the corporation's right to recover for mismanagement that occurred before the principal stockholder bought his shares from the wrongdoers, allowed the corporation full recovery for unauthorized withdrawals and conversion of funds before the sale. The Nebraska court rested this distinction on the difference between a proceeding in equity and a suit at common law. In equity, the court said, the separate existence of the corporation could be disregarded and the corporation's suit could be regarded as brought for the benefit of its stockholders, but in a suit at law to recover the corporation's property only the corporation's rights could properly be considered. Under our blended Texas system of law and equity, we see no reason why the separate existence of the corporation should be disregarded in one case but not in another. In either case, the corporation's recovery is ultimately for the benefit of its stockholders (aside from the rights of creditors), and in either case, to allow the corporation full recovery for a wrong done before the present stockholders acquired their shares would give them the same kind of windfall. Consequently, we see no reason to exclude actions at law for misappropriation of funds from application of the *Bangor Punta* doctrine or to determine whether the present action should be considered as invoking an equitable or legal remedy.

■ ABC contends further that none of its recovery here should be barred by the *Bangor Punta* doctrine because of defendants' fraud and breach of warranty. We cannot agree. We conclude that ABC, as distinguished from its stockholders, has no basis for a claim based on fraud or breach of warranty. The only basis alleged for fraud or breach of warranty is the representations and warranties in the settlement agreement. According to the allegations of the petition, the unauthorized withdrawals had already occurred when the representations and warranties were made. ABC, as distinguished from the purchasers of the stock sold pursuant to the settlement, parted with nothing in reliance on the representations and warranties except possibly any claims it had that were released in the settlement. Its claim for the unauthorized withdrawals arose when the withdrawals were made, not when the settlement agreement was signed. That claim arose on behalf of all the stockholders at the time of the withdrawals. The settlement agreement added nothing to ABC's claim for the unauthorized withdrawals, but, under *Bangor Punta,* resulted in barring that claim to the extent of the 50% interest transferred, as we have already held. Consequently, we hold that the representations and warranties in the settlement agreement provide no ground for avoiding *Bangor Punta* with respect to the 50% interest transferred, and any claim based on fraud or breach of warranty must be asserted by the purchasing stockholders individually.

■ Moreover, if the sale of the stock was induced by fraud or breach of warranty, the purchasers have their remedy by way of damages for reduction in the value of the shares as a result of the wrongdoing. *See Home Fire Insurance Co. v. Barber,* 67 Neb. 644, 93 N.W. 1024, 1029 (1903). To permit such a recovery and also permit the corporation to recover the full amount of the unauthorized withdrawals would result in a double recovery and thus a windfall to the purchasers, just as if no fraud had occurred and the corporation were allowed to recover the full amount of the

withdrawals. We hold, therefore, that regardless of any fraudulent misrepresentations or breach of warranty, *Bangor Punta* bars ABC's recovery for the unauthorized withdrawals to the extent of the stock interest sold in the settlement, but does not affect its recovery to the extent of the stock interest not included in the sale.

■ The only relevance of the representations and warranties to ABC's claim is to the effectiveness of the release of all preexisting claims by ABC against Myers and Bernabi. We do not reach this question because the release is an affirmative defense that was not properly raised in the trial court. Although defendants pleaded this affirmative defense in their answers, as required by rule 94 of the Texas Rules of Civil Procedure, they did not assert it in their motions for summary judgment. Rule 166–A(c) of the Texas Rules of Civil Procedure provides that the motion "shall state the specific grounds therefor." Since this ground was not raised in the motion, ABC was not required to reply to it, and we cannot consider it in support of the judgment. *Roling v. McGeorge*, 645 S.W.2d 886, 888 (Tex.App.—Tyler 1983, no writ); *Castillo v. American States Insurance Co.*, 550 S.W.2d 408, 409 (Tex.Civ.App.— Dallas 1977, writ ref'd n.r.e.); *Avinger v. Campbell*, 499 S.W.2d 698, 702 (Tex.Civ. App.—Dallas 1973), *writ ref'd n.r.e. per curiam*, 505 S.W.2d 788 (Tex.1974).[3]

Since we cannot uphold the summary judgment on the ground of the release, we must consider how the "tainted shares" rationale should be applied here. ABC contends that since Israel acquired only 25% of the outstanding shares, ABC's recovery should be barred only to the extent of 25% of the authorized withdrawals. Defendants insist that since Israel now owns 99% of the stock, but at the time of the wrongdoing he owned less than 50%, ABC's recovery should be barred in the proportion that Israel's shares acquired from defendants bears to the total shares he now owns. This difference arises because of the 25% of the stock originally sold to Italtel and since acquired by ABC as treasury stock.

■ We conclude that so far as recovery by ABC is concerned, the reduction in the corporation's recovery resulting from application of the *Bangor Punta* doctrine should be determined by the stock ownership before the sale. Israel owned 48% and other parties owned 2% of the outstanding stock at the time of the wrongdoing; consequently, if we apply *Bangor Punta*, disregard the separate existence of the corporation, and consider the interests of the respective stockholders, we are led to the conclusion that the sums misappropriated were funds beneficially owned by present stockholders to the extent of their 50% interest. Therefore, defendants should be required to make restitution to the extent of 50% of the funds misappropriated. For this purpose it is immaterial that some of the shares defendants sold are now held as treasury shares.[4]

3. The effect of the release on ABC's claim is a question that may be raised on remand. This question turns on whether ABC, as well as Israel, is entitled to rely on the representations and warranties. In paragraph 10 of the settlement agreement, the representations and warranties are expressly made "to Israel," without naming ABC. However, this paragraph continues, "and this Agreement is made in reliance on the following, each of which is deemed to be a separate covenant, representation and warranty. . . ." This language is not limited to Israel. This question is a matter of interpretation not properly before us on this appeal.

4. Our discussion of this question does not fully consider the interests of minor stockholders, who are not represented here. We recognize that our solution may affect such minor share-

holders disproportionately because ABC's recovery will benefit Israel in proportion to his present stock ownership rather than in proportion to his ownership when the wrongdoing occurred. If the rights of other stockholders must be considered, then recovery by the corporation will favor disproportionately the shareholders whose holdings have increased. To do exact justice, it may be necessary to carry the equitable disregard of the separate corporate existence one step further and treat the corporation's recovery as being for the separate benefit of the individual shareholders in proportion to their stock ownership at the time of the wrongdoing. *See Matthews v. Headley Chocolate Co.*, 130 Md. 523, 532–35; 100 A. 645, 650–51 (1917). Thus 96% of the recovery (48% of the withdrawals) would be for the benefit of Israel and 4%

### Israel's Claim

Defendants do not dispute the facts alleged in plaintiffs' petition or in plaintiffs' response to defendants' motions for summary judgment. The only summary-judgment proof that defendants rely on in support of their motions is the deposition testimony of Israel that the statement of assets and liabilities furnished to him before he signed the settlement agreement was accurate and that his determination to purchase additional stock from defendants was based on a certain expectation as to the assets and liabilities of the company that turned out to be substantially correct. In the light of this testimony, defendants contended in the trial court and Myers also contends here that they have no liability to Israel for fraud or breach of warranty.

In this state of the record, we accept as true for the purpose of the motion for summary judgment the allegations of the petition, including the allegations concerning the compromise settlement agreement and the previous unauthorized withdrawals by defendants amounting to $80,000. We also accept as undisputed plaintiffs' allegation that because of the alleged unauthorized withdrawals, the representations in the settlement agreement were false and the warranties in that agreement were breached. Accordingly, the summary judgment against Israel rests on the narrow ground that his testimony shows as a matter of law that he suffered no damages because of the misrepresentations and breaches of warranty.

We conclude that this ground of summary judgment is not well taken. Israel's payment of what he thought the stock was worth is not dispositive. He paid for the warranties as well as for the stock. He also released Myers and Bernabi of liability for past acts. As officer, director, and major stockholder of ABC, he joined in the settlement agreement by which ABC released Myers and Bernabi from liability for past acts. In return, Israel received ABC

stock and, among other things, a warranty that the limited release of Myers and Bernabi would not forgive acts that "caused ABC to engage in any transaction affecting ABC's business or properties not in the ordinary course of business."

Myers argues that the assets of the corporation as represented to Israel at the time of the sale would have been no more valuable if no unauthorized withdrawals had been made. The fallacy in this argument is that if no withdrawals had been made, the stock sold to Israel would have been more valuable because the $80,000 withdrawn would have been added and the corporation would have been that much richer. Although Israel may have been content to buy the stock at the price specified if no such unauthorized transactions had occurred, the settlement agreement also warrants to him any benefit he might realize as a stockholder from additional sums due to the corporation as a result of transactions between the corporation and defendants outside the usual course of business.

Whether the parties contracted in contemplation of the possible application of the *Bangor Punta* doctrine to any claim by ABC against Myers and Bernabi, the warranties provided in the settlement seem particularly pertinent in view of our holding with respect to ABC's claim. To the extent that Israel's purchase of the stock from defendants bars ABC's claim for the unauthorized withdrawals, defendants' liability for breach of warranty is the only remedy available for the unauthorized withdrawals. Thus, Israel, if he suspected that unauthorized transactions had taken place between Myers and Bernabi and the corporation, would have been well advised to insist on just such warranties as the settlement agreement provides. His apparent perspicacity in this respect cannot be dismissed as irrelevant to his purchase of the stock.[5]

(2% of the withdrawals) would be for the benefit of the minor stockholders. On this appeal,

we need not consider how a sale by any of the minor stockholders would affect their rights.

**5.** In this opinion we need not discuss whether

Thus, Israel's lack of reliance on the warranty in determining how much he would pay for the shares is not material, as it would be if his claim were only one for fraudulent misrepresentation. According to the settlement agreement, Myers and Bernabi not only *represented* that they had engaged in no transaction with ABC other than in the regular course of business; they *warranted* that to be the fact. Consequently, they are contractually liable to the extent that their unauthorized withdrawals reduced the value of the stock sold. This is the only reasonable interpretation of the settlement agreement. Defendants do not assert in their motion for summary judgment that the unauthorized withdrawals did not in fact reduce the value of the stock. The amount of that reduction is a question of fact for the trial court or jury, which could not properly be resolved by summary judgment. Therefore, we hold that to the extent that defendants' unauthorized withdrawals reduced the value of the shares sold, Israel is entitled to recover damages measured by the reduction in value of the stock sold to him.

With respect to the 25% of the stock sold to Italtel, no argument has been presented here. We note that by the settlement agreement on its face, Myers, Bernabi, and Laws purport to sell 50% of the stock to Israel and the warranty is made to Israel only. If, as defendants admit, Italtel supplied one-half of the purchase money and received one-half of the stock sold, then the rights acquired by Italtel may have been the same as those acquired by Israel. This question, and also the question whether ABC, as the subsequent purchaser of those shares, has the same rights as Israel to enforce the warranty against defendants, are matters we leave to the trial court after development of the facts.

Reversed and remanded.

SHUMPERT, J., not participating.

Israel's damages for breach of warranty may include reduction in the value of the stock he owned before the settlement. This question may become material if ABC's release of all claims against Myers and Bernabi as provided in the settlement is held to be a complete bar of ABC's claim for the unauthorized withdrawals.