FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

Fred J. BENSON, John J. Koldus, III, Dan-
iel C. Pfannstiel, Robert A. Lacey, Rob-
ert W. Siegert, Jr., H.K. Odom, Dale
Sawyer, Chris Sawyer, the Unknown
Heirs of Joe Sawyer, Louise J. King as
Independent Executrix of the Estate of
Luther G. Jones, Alvin B. Wooten,
James C. Smith, Britton L. Rice, Gary D.
Guest, Chalon Jones, Morris F. Hamil-
ton, Jr., Jack W. Lester, Nathan R.
Hines, M. Patrick Siegert, Bill Young-
kin, and Donna R. Davis, Defendants.

Civ. A. No. H–93–640.

United States District Court,
S.D. Texas,
Houston Division.

March 3, 1994.

Bobby Nick Turner, F.D.I.C., Dallas, TX, for F.D.I.C.

Eugene B. Wilshire, Jr., Wilshire Scott Halbach & Dyer, Houston, TX, for Fred J. Benson, John J. Koldus, Daniel C. Pfannstiel, Robert A. Lacey, Robert W. Siegert, Jr., Dale Sawyer, Chris Sawyer, The Unknown Heirs of Joe Sawyer, Louise J. King, Alvin B. Wooten, James C. Smith, Britton L. Rice, Gary D. Guest, Chalon Jones, Morris F. Hamilton, Jr., Nathan R. Hines, M. Patrick Siegert, Donna R. Davis, M.K. Odom, Jr., Jack W. Lester, Jr.

Bill Youngkin, pro se.

Maureen Powers, Asst. Atty. Gen., Finance Div., Austin, TX, for Dan Morales.

## ORDER

HARMON, District Judge.

Pending before the Court in the above referenced action against twenty-two former directors and officers of the University National Bank of College Station, Texas ("UNB"), a federally insured national bank that failed, and against the heirs [1] of two deceased directors for damages arising out of alleged negligence, gross negligence, negligence per se, and breach of duties of obedience, care, and loyalty are the following motions:

(1) A motion to dismiss, or, alternatively for partial summary judgment from Director Defendants Fred J. Benson, John Koldus III, Louise King, Nathan R. Hines, Jack W. Lester, H.K. Odom, Daniel Pfannstiel, Alvin Price, Britton Rice, Patrick Siegert, Robert W. Siegert, Jr., James Connor Smith, Joe Stanley Stephen, and Alvin Wooten (instrument # 29);

(2) Supplemental motion of Defendant Britton Rice for summary judgment (# 43), which incorporates # 29;

(3) Motion of Defendant Bill Youngkin to dismiss, or, alternatively, for summary judgment (# 44), which also incorporates # 29;

(4) Motion to dismiss, or, alternatively, motion for partial summary judgment, or, alternatively, for more definite statement from Defendants Gary D. Guest, Donna R. Davis, M.L. Cashion, Morris F. Hamilton, Robert A. Lacey, and Oliver Bishop (# 48), also incorporating # 29; and

(5) Rule 12 motion of the Sawyer Defendants or, alternatively, motion for summary judgment (# 50), incorporating limitations challenge of # 29.

The Court initially addresses the motions to dismiss for failure to state a claim, or, alternatively, for partial summary judgment on the grounds that all claims based on events prior to March 8, 1988 are barred by Texas' two-year statute of limitations. Tex. Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986); *FDIC v. Nathan*, 804 F.Supp. 888, 892 (S.D.Tex.1992). The last two motions contain some of the same challenges.

First Defendants argue generally that the claims against them are barred by the Texas business judgment rule,[2] which is a substan-

---

**1.** The Federal Deposit Insurance Corporation sues the heirs (Chris Sawyer, Dale Sawyer, and Louise Jones King) of two deceased officers, Joe Sawyer and Luther Jones, because during the relevant period of alleged misconduct, the Texas Pacific Indemnity Company provided coverage for directors and officers of UNB under an Executive Liability and Indemnity Policy, which became an asset of the officers' estates.

**2.** The business judgment rule is defined in *Gearhart Industries, Inc. v. Smith International, Inc.*, 741 F.2d 707, 721 (5th Cir.1984) as "a corporate director who acts in good faith without corrupt motive will not be held liable for mistakes of business judgment that damage corporate interests." *Gearhart* quotes *Cates v. Sparkman*, 73 Tex. 619, 11 S.W. 846 (1889), for the standard for judicial intervention:

> [I]f the acts or things are or may be that which the majority of the company have a right to do, or if they have been done irregularly, negligently, or imprudently, or are within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved, these would not constitute such a breach of duty, however unwise or inexpedient such acts

might be, as would authorize interference by the courts at the suit of a shareholder.
*Id.*

The Texas Supreme Court in *Cates* further stated a rule recognized and applied in later Texas cases:

> The breach of duty or conduct of officers and directors which would authorize, in a proper case, the court's interference in suits of this character is that which is characterized by *ultra vires*, fraudulent, and injurious practices, abuse of power, and oppression on the part of the company or its controlling agency clearly subversive of the rights of the minority, or of a shareholder, and which, without such interference, would leave the latter remediless.

11 S.W. at 849.

Defendants urge that the business judgment rule is a substantive rule of law that shields them as corporate directors from liability for their actions because they were not personally interested in the challenged transactions and did not act fraudulently or contrary to their lawful authority. *FDIC v. Brown, et al.*, 812 F.Supp. 722 (S.D.Tex.1992) (Lake, J.); *RTC v. Holmes, et al.*, C.A. No. H–92–0753, 1992 WL 533256 (S.D.Tex. Aug. 7, 1992) (Lake, J.); *RTC v. Norris, et al.*, 830 F.Supp. 351 (S.D.Tex.1993) (Rosenthal, J.).

tive rule of law requiring pleading and proof to avoid its reach, as well as being a defense to negligence actions. Specifically they maintain that Count One, breach of the duty of obedience by *ultra vires* acts, fails to plead any *ultra vires* acts and alleges no actionable participation in any of the stated banking transgressions by the former directors and members of the loan committee in approving, ratifying, or permitting loans that allegedly violated federal laws and regulations for banking institutions. They urge that the FDIC has failed to allege actual knowledge by the directors at the time they approved the loans that the loans did not comply with the laws or regulations or participation in these alleged illegal acts or that such actions exceeded their authority. They maintain that while their conduct in approving and ratifying loans may have been negligent, it was not *ultra vires,* i.e., beyond their corporate power, and that their conduct is therefore protected by the business judgment rule. The directors and members of the loan committee clearly had the authority to ratify or approve loans submitted to them by officers and employees of the bank, almost all after the loans had been consummated and funded, and their failure to monitor the latters' preparation of loans does not subject them to personal liability. Furthermore, the fact that an act is illegal does not make it *ultra vires.* Nor are they grossly negligent for "abdicating" their duties, insist Defendants, because as the amended complaint charges, they acted: they permitted without questioning certain corporate transactions and actively approved the loans. *Joy v. North,* 692 F.2d 880 (2d Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *Brown,* 812 F.Supp. at 726. Defendants insist that even if the complaint had alleged an *ultra vires* act, no claim was stated because the FDIC has failed to plead any negligence by the directors that led to violation of a statute and damage that was proximately caused by that negligence.

Defendants contend that the remaining counts also fail to state a claim. Count Two's claim of breach of the fiduciary duty of loyalty fails to state a claim because there are no charges that any former director was adversely "interested" as to UNB. Counts Three and Four, alleging negligent and grossly negligent breach of a director's duty of care, fail to state claims because voting to approve extensions of credit in the ordinary course of board meetings is protected by the business judgment rule and as a matter of law does not constitute gross negligence. They insist there are no facts alleged to support gross negligence. Count Five for negligence per se fails to state a claim again because such a claim is still a negligence action precluded by the business judgment rule and because the directors, unlike UNB, did not lend money, were not regulated, and lacked the legal capacity to violate the lending laws.

Second, Defendants contend that the claims were time-barred before Plaintiff the Federal Deposit Insurance Corporation ("the FDIC") took over the insolvent bank[3] and therefore the FDIC, as an assignee of UNB, cannot assert them. They insist that Texas law does not recognize the adverse domination doctrine, which tolls the statute of limitations where there is domination of a corporation by wrongdoers. Furthermore, given that the purpose of the adverse domination doctrine is protection of the shareholders of a corporation from the hidden acts of fraudulent management, they argue that there was no adversity here after January 1, 1986 because the board of directors of the single shareholder, University Bancorporation, Inc. ("Bancorp"), which acquired one hundred percent of the common stock of UNB, effective as of January 1, 1985, was virtually identical to UNB's board of directors and therefore the shareholder had full knowledge of the alleged wrongdoing after the acquisition.

---

**3.** The FDIC explains, with documentary evidence, that the Office of the Comptroller of Currency declared UNB insolvent and appointed the FDIC as Receiver ("the receiver") on March 8, 1990. Subsequently, pursuant to a purchase and assumption agreement, a number of UNB's assets were sold and transferred to another bank. The remaining assets, including all claims against the officers and directors, were sold and transferred to the FDIC in its corporate capacity, which brings this suit.

Defendants further assert that because one hundred percent of the common stock of UNB was sold at a fair price on December 31, 1984, all claims against officers and directors for alleged nonfeasance and malfeasance that occurred before the sale are barred by the *"Bangor Punta* Doctrine," which precludes claims by a corporation or its successors in interest against the officers and directors for acts that occurred prior to a fair value sale of all of the corporation's common stock. *Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Co.,* 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974). Texas has adopted this doctrine. *Advanced Business Communications, Inc. v. Myers,* 695 S.W.2d 601, 605–06 (Tex.App.—Dallas 1985, no writ). The rationale of the doctrine is that permitting new shareholders to receive the benefits of claims against management for prior acts would permit a windfall to the purchasers because the price they would have paid for the shares of stock would have already been deflated because of the wrongdoing. *Id.,* 417 U.S. at 711–13, 94 S.Ct. at 2583–84. The presumption is that the new owners paid a decreased value for the shares of stock because their value was reduced by the wrongful acts. *Id.*

## STANDARDS OF REVIEW

In reviewing the sufficiency of a complaint in response to a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), before any evidence has been submitted, the district court's task is limited. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims. *Id.* The district court should consider all allegations in favor of the plaintiff and accept as true all well-pleaded facts in the complaint. *Griffith v. Johnston,* 899 F.2d 1427, 1432–33 (5th Cir. 1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); *Lawal v. British Airways, PLC,* 812 F.Supp. 713, 716 (S.D.Tex.1992). Dismissal is not appropriate "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle him to

relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The movant seeking a federal summary judgment initially must inform the court of the basis for its motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that it is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219, 222 (5th Cir.1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed.R.Civ.P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings but must produce affirmative evidence and specific facts. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15. It meets this burden only if it shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254, 106 S.Ct. at 2513. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252, 106 S.Ct. at 2512. All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986), citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Once the burden of proof has shifted to the non-movants, they "must do more that simply show that there is

some metaphysical doubt as to the material facts." *Id.* 475 U.S. at 586, 106 S.Ct. at 1356.

In its amended complaint, the FDIC has specifically questioned thirteen loan transactions with allegedly intentional[4] approval or ratification by the board of directors and the loan committee on which Defendants, although sitting at different times, continually formed a majority. It has further alleged that the statute of limitations on each loan was tolled by the adverse domination doctrine until the Receiver took over the failed UNB.

Extensive briefing was filed in this suit developing the arguments for dismissal and dealing with evolving case law. Since the record speaks for itself, the Court will not attempt to review all the arguments but rather will present its conclusions and cite authority for them.

■ The FDIC first challenges Defendants' characterization of itself as simply the assignee of UNB. The Receiver took over the failed institution pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), under which it not only stepped into UNB's shoes, but it also acquired the rights of the bank's creditors, depositors, and shareholders. In turn, the FDIC in its corporate capacity acquired through its purchase and assumption agreement all the rights, powers, privileges and authorities of the Receiver, its assignor, pursuant to § 1823(d)(3)(A). Moreover under section 1.3 of that agreement, any excess recovery on those assets, including claims against the officers and directors, would be funneled back to the Receiver and would inure to the benefit of the institution's depositors and creditors under the distribution scheme established by 12 U.S.C. § 1821(d)(11) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989. Thus the FDIC in its corporate capacity has powers that are much broader than those of the failed UNB. *FDIC v. Wheat,* 970 F.2d 124 (5th Cir.1992); *Fidelity & De-*

*posit Co. of Md. v. Conner,* 973 F.2d 1236 (5th Cir.1992).

■ Nevertheless the FDIC, as the assignee of the Receiver and successor to UNB, brings this suit for negligence and breach of fiduciary duty, not only as a derivative shareholder or depositor, but also on behalf of the institution UNB as its subrogee against its former officers and directors. *FDIC v. Wheat,* 970 F.2d 124, 130 (5th Cir. 1992); *Fidelity & Deposit Company of Maryland v. Conner,* 973 F.2d 1236, 1241 (5th Cir.1992).

## LIMITATIONS AND THE DOCTRINE OF ADVERSE DOMINATION

■ First the Court addresses the complex issue of limitations raised in this action. The FDIC in its corporate capacity stepped into the shoes of the Receiver here; if the bank was time-barred from suing on any of the alleged wrongful acts of the officers and directors, so are the Receiver and the FDIC Corporate. The applicable statute of limitations for the FDIC's claims of negligence, gross negligence, negligence per se, and breach of fiduciary duties,[5] all of which sound in tort, is two years under Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986). *F.D.I.C. v. Dawson,* 4 F.3d 1303, 1307 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994); *Holmes, supra.* If the claims would have been time-barred at the time that the corporation is acquired by a United States agency, the claims cannot be revived by that acquisition. *Guaranty Trust Co. v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). *See also Randolph v. RTC,* 995 F.2d 611, 619 (5th Cir.1993), *cert. denied sub nom. Beeson v. Phillips, King and Smith,* —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994) (FIR-REA's federal statute of limitations, 12 U.S.C. § 1821(d)(14) does not revive stale state law claims acquired by the FDIC); *RTC v. Seale,* 13 F.3d 850 (5th Cir.1994). If, when the FDIC–Receiver acquires the claim,

---

4. "... [T]he actions of the defendants ... were so reckless as to be considered intentional."

5. In Texas breach of fiduciary duty and gross negligence sound in tort and are subject to the

two-year statute of limitations cited. *Russell v. Campbell,* 725 S.W.2d 739, 744 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

it is not time-barred by the applicable state statute of limitations, the federal statute of limitations in FIRREA for claims brought by the FDIC will preempt the state statute at that time and will begin to run. *Dawson,* 4 F.3d at 1307; *F.D.I.C. v. Howse,* 736 F.Supp. 1437, 1444 (S.D.Tex.1990). Title 12 U.S.C. § 1821(d)(14). The federal statute permits the Receiver to bring suit in tort with the longer of "(I) the three-year period beginning on the date when the claim accrues; or (II) the period applicable under State law." The claim accrues on the date the FDIC is appointed receiver or when the FDIC discovers the alleged wrongdoing. Here the only threshold issue [6] is whether the state limitations period had expired before the Receiver was appointed and took over the failed bank. *See, e.g., F.D.I.C. v. Shrader & York,* 991 F.2d 216, 220–27 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *Howse,* 736 F.Supp. at 1440.

■ UNB was declared insolvent and the Receiver appointed on March 8, 1990. Therefore the two-year Texas statute of limitations for tort began to run on March 8, 1988, and all claims arising from acts occurring prior to that date would time-barred unless there is reason to toll the statute of limitations. Claims of violation of federal statutes and regulations are subject to the four-year statute of limitations, now codified as Texas Civil Practice & Remedies Code § 16.051. *Corsicana National Bank v. Johnson,* 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141 (1919). The FDIC's first amended original complaint charges the former offices and directors with wrongful acts involving numerous loans dating back as far as 1984; indeed only one was made after March 8, 1988. Usually limitations begins to run against an action against directors of a corporation for malfeasance or nonfeasance from the time the wrongs complained of were perpetrated. *Dawson,* 4 F.3d at 1308. The Texas rule is that the tort statute of limitations begins to run when the tort is committed unless there has been fraudulent concealment or unless a statute exists to the contrary. *Id.* at 1312.

■ The FDIC argues that limitations did not expire because the statute should be tolled by the equitable doctrine of adverse domination and raises fact issues regarding tolling of limitations to preclude summary judgment on at least some of its claims.

■ Contrary to Defendants' representations, Texas does recognize the adverse domination doctrine for purposes of equitable tolling of limitations. In *Dawson* the Fifth Circuit held that Texas follows the "majority test" approach to the adverse domination doctrine, under which the plaintiff need show not that the wrongdoers totally dominated the corporation, but only that the majority of voting board members were culpable wrongdoers during the period for which the plaintiff seeks to toll the statute. 4 F.3d at 1310. The rationale behind application of the doctrine would be to preclude the culpable majority from continuing to operate the corporation, dominate the nonculpable members, and control sources of information and funding in a manner that would prevent action being taken against them. In other words, the FDIC here would have to show that the majority of approving board members, represented by Defendants here, were wrongdoers from the earliest loan in 1984 until March 8, 1988.

Defendants argue that the doctrine of adverse domination is inapplicable here because there is no adversity: since the board of directors of the single shareholder Bancorp was the same board that controlled UNB, the shareholder was fully informed of all acts of UNB's officers and directors. The FDIC responds that this situation, where wrongdoers will not bring an action against themselves, is precisely the target of this equitable doctrine. The board of Bancorp could not reasonably be expected to sue UNB's officers and directors because they were one and the same, and both self-interested. *See Holmes, supra.* As keepers of the public trust, the wrongful acts of directors of a national bank injure depositors, creditors, the Bank Insurance Fund, and ultimately the public. The FDIC notes that a shareholder cannot ratify a transaction that violates a statute or public policy. *Matter of Safety*

---

6. The FDIC filed suit three years exactly after UNB failed and the Receiver was appointed.

*International, Inc.,* 775 F.2d 660 (5th Cir. 1985); *Pruitt v. Westbrook,* 11 S.W.2d 562 (Tex.Civ.App.—Fort Worth 1928, no writ).

The Fifth Circuit has recognized the application of the doctrine of adverse domination in favor of government appointed receivers suing directors of failed banks, although the appellate court has also concluded that the doctrine does not apply to mere negligence. *Dawson,* 4 F.3d at 1312. This Court agrees that by apparent admission by Defendants of the virtual identity of the UNB and Bancorp boards of directors and FDIC's summary judgment evidence relating to the sale of UNB stock, the FDIC has raised a fact issue as to whether the doctrine of adverse domination tolls limitations in this action.

■ The Fifth Circuit has ruled that when the Texas statute of limitations applies, the Texas law of adverse domination, not federal equitable tolling principles, would control the tolling issue in pre-receivership events. *Dawson,* 4 F.3d at 1309; *Seale, supra.* Furthermore, as noted, the Fifth Circuit has indicated that it does not believe that Texas courts would extend the "very narrow doctrine" of adverse domination to cases in which the wrongdoing would consist of mere negligence because such a broad application would eliminate limitations bars in nearly all cases involving a corporation's actions against its own directors. *Id.* at 1312. Instead it determined that Texas courts would restrict the tolling by adverse domination to those claims against directors and officers who have been active participants in wrongdoing, concealment, or fraud that actively injures the corporation, and not apply it to claims against directors and officers who have been merely negligent, e.g., who have failed to exercise every precaution or who have failed to investigate. *Id.* Thus FDIC's simple negligence claims prior to March 8, 1988 would be barred.[7]

To determine whether the doctrine of adverse domination might toll limitations on claims other than negligence, the question, as indicated, is whether the FDIC can show that the majority of the board of directors was more than negligent in failing to supervise the loans and was actively involved in *ultra vires* conduct or fraudulent concealment of wrongdoing, so as to avoid the business judgment rule. *Id.* at 1312–13. The FDIC's pleadings document the uncontroverted compositions of the loan committee and the boards of directors of UNB at the time each loan was consummated, approved, and extended and indicate that Defendants, though different ones at different times, were in the majority during the period in question.

### COUNT ONE—ULTRA VIRES

■ Count One alleges that Defendants intentionally or recklessly breached their duty of obedience and engaged in *ultra vires* acts by approving and/or ratifying and/or permitting loans that violated federal laws and regulations, including 12 U.S.C. § 84, 12 U.S.C. § 375b, 12 C.F.R. § 215, 18 U.S.C. § 215, 12 U.S.C. § 29, 12 U.S.C. § 60, and 12 U.S.C. § 1972. Therefore Defendants are liable under 12 U.S.C. § 1972.

Regarding Count One, the FDIC argues that the business judgment rule does not bar its negligence claims and that, even if the rule did apply, the FDIC has adequately pleaded *ultra vires* acts by Defendants by alleging that after regulatory agencies had issued Reports of Examinations and a consulting firm provided a report critical of earlier loans' noncompliance with statutes and regulations, Defendants continued the approval or ratification of loans that violated banking laws and regulations and public policy to move beyond the ambit of the business judgment rule. *Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707, 721 (5th Cir.1984). The FDIC concludes that from the reports Defendants knew or should have known that they were approving loans that violated federal statutes and regulations. Selections of these reports are included in an affidavit submitted by Defendant Siegart. The FDIC argues that its complaint alleging that "the actions of the defendants involved

---

7. Defendants Guest, Davis, Cashion, Hamilton, Lacey, and Bishop move to dismiss or for partial summary judgment on Count Three's negligent breach of director duty of care, Count Five's negligence per se, and generally all breach of duty of ordinary care claims on the basis of Texas H.B. 1076. This issue will be discussed later.

in this transaction were so reckless as to be considered intentional" meets the definition of "knowing" in *Corsicana,* 251 U.S. at 71–72, 40 S.Ct. at 84: if the director "deliberately refrained from investigating that which it was his duty to investigate, any resulting violation of the statute must be regarded as 'in effect intentional.' "

The FDIC further argues that the business judgment rule functions only as a defense to a negligence or breach of duty action brought by shareholders against a bank officer or director. *Wheat,* 970 F.2d at 130–31 & n. 13.[8] The FDIC maintains that the application of the business judgment rule and other common business defenses to directors and officers of banking corporations is restricted because of the banking officials' unusual responsibility and heightened common-law and statutory duty to the public to use good faith, prudence, care, and diligence, which require a higher standard of care. *See, e.g., Wheat,* 970 F.2d at 128–30, *citing Seale v. Baker,* 70 Tex. 283, 289, 7 S.W. 742, 744 (1888). The FDIC further theorizes that the business judgment rule only protects bank directors and officers in derivative shareholder suits, but not in suits brought by the corporation, here by the FDIC on behalf of the bank. It cites no authority for the distinction that it makes.

■■■■■ This Court finds that the Texas business judgment rule does not function simply as a defense to claims of negligence or breach of fiduciary duty by corporate directors. *Brown,* 812 F.Supp. at 724; *Holmes, supra; Norris, supra.* As stated by Judge Lake and Judge Rosenthal, the Texas business judgment rule is a substantive rule of law that requires of the FDIC both pleading and proof to avoid its reach. *Id.* This Court also concurs with Judge Lake that the FDIC's unsupported contention that in Texas a higher standard should apply to the conduct of bank officers and directors and that the business judgment rule applies only to suits brought against them on behalf of the shareholders in their own interest, and not to

actions brought on behalf of the bank, is not persuasive. *Brown,* 812 F.Supp. at 724 n. 2. The FDIC's main authority, *Wheat,* did not hold that the business judgment rule is limited to a defense in a negligence or breach of fiduciary action against a corporate director but merely approved of a jury instruction on such a defense. In that case the defendant director was found liable because he had a personal interest in approving an inadequately secured loan. There is no indication of he raised the business judgment rule before the case was submitted to the jury. The Circuit approved of a defensive instruction providing that

> You are instructed that a director or officer of a bank shall not be liable for claims against him if, in the discharge of his duties, he exercised ordinary care and acted in good faith and honestly exercised his best business judgment within the limits of the actual authority of his position with the bank.

> A director or officer of a bank shall not be held liable for an honest mistake of judgment if he acted with due care, in good faith, and in furtherance of a rational business purpose.

970 F.2d at 130–31 and n. 13. Moreover, the FDIC's theory would require the Court to conclude that *Wheat* overturned *Gearhart,* in contravention of the Fifth Circuit's longstanding rule that only an *en banc* court, not a panel, can overturn an earlier panel's ruling. *Ford v. United States,* 618 F.2d 357, 361 (5th Cir.1980).

■■■■■ To avoid the protective shield of the business judgment rule, for Count One the FDIC must show that the acts of the directors and officers were *ultra vires,* or tainted by fraud, or a complete abdication of duty in order to pursue any negligence claims not barred by limitations. Under Texas law *ultra vires* acts are "acts beyond the scope of the powers of a corporation as defined by its charter or the laws of the state of incorporation." *Gearhart,* 741 F.2d at 719.

---

8. The business judgment rule is embodied in *Wheat* as a jury instruction: "A director or officer of a bank shall not be held liable for an honest mistake of judgment if he acted with due care, in good faith, and in furtherance of a rational business purpose." 970 F.2d at 131, n. 13.

Approving or ratifying loans brought to a director by officers or employees of the bank is clearly within a director's authority. The failure to supervise loan officers is not an *ultra vires* act. Moreover the business judgment rule will protect a director even if the acts are *ultra vires;* the acts must be grossly negligent or a complete abdication of the director's responsibility for liability to attach. *Joy v. North,* 692 F.2d 880 (2d Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *Jewell v. Sal–O–Dent Laboratories, Inc.,* 69 S.W.2d 544 (Tex.Civ.App.—Eastland 1934, writ ref'd). The duty of obedience requires a director to avoid committing "illegal acts," a term which includes "violation of a specific statute." *Gearhart,* 741 F.2d at 719. To impose liability on a disinterested director for *ultra vires* acts of the bank's officers and employees, a plaintiff must plead and prove, even where an act is illegal, that the director knew of or took part in it. *Briggs v. Spaulding,* 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662 (1891); *Fitzpatrick v. FDIC,* 765 F.2d 569, 577 (6th Cir.1985); *King v. Ballard,* 643 S.W.2d 457 (Tex.App.—Eastland 1982), *rev'd in part on other grounds,* 652 S.W.2d 767 (Tex.1983); *Sutton v. Reagan & Gee,* 405 S.W.2d 828 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). *See also* Ubelaker, *Director Liability Under the Business Judgment Rule,* 35 S.W.L.J. 775, 782 (1981). A director who is grossly negligent and completely abdicates his responsibility and fails to exercise his judgment as a director is also not protected by the business judgment rule. *Joy,* 692 F.2d at 886 (rule does not apply to cases "in which the corporate decision ... results from an obvious and prolonged failure to exercise oversight or supervision.").

In essence the FDIC contends that the regulators' bank examination reports and the minutes of the meetings of the board of directors expose "the pattern of the Defendants [*sic*] conduct over an extended period of time and the indifference with which the Defendants carried out their duties as directors of the bank. The Reports of Examination reflect that University National Bank was rife with insider loan abuse [that could] not occur without either the active or passive involvement of the board of directors."

FDIC's Response at 24, instrument # 47. The directors allegedly allowed officers of UNB to make and fund insider loans without first obtaining the approval of the board of directors, as required by law. Indeed the FDIC contends that the loans were in excess of the legal lending limit of the bank and therefore could not be approved by the board.

While the FDIC makes many conclusory allegations, it has not submitted proof of knowing or active participation in fraud, concealment, regulatory violations, or other illegal activity amounting to more than negligence by the director Defendants. *See generally Dawson,* 4 F.3d at 1311–12; *Seale, supra.* Nor does it support its claims of nonfeasance and abdication. This Court finds that the business judgment rule precludes any of FDIC's claims for simple negligence that were not already barred by limitations. Thus far the FDIC has fail to show with specific factual proof that Defendants knowingly committed acts outside the scope of their authority or that they participated in acts that they knew were illegal at the time.

### COUNT TWO: BREACH OF FIDUCIARY DUTY OF LOYALTY

Regarding Count Two, the FDIC contends that Defendants were self-interested controlling shareholders, officers, and directors who breached their fiduciary duty of loyalty to UNB in taking actions beneficial to themselves rather than to the bank. Furthermore the FDIC maintains that the board of directors of Bancorp, virtually the same as that of UNB, was necessarily self-interested. Those involved allegedly delayed, ignored or concealed recognition of improper loans by entering into imprudent new loan transactions with new borrowers. Several of the directors are alleged to have obtained loans from UNB and Defendants approved each other's loans allegedly without regard to creditworthiness or to the bank's interests and in violation of insider loan statutes and regulations.

For a plaintiff to recover damages on behalf of a corporation from an interested director, the plaintiff must plead

and prove (1) that the conduct of the director was outside the judgment and discretion that the rule is designed to protect or (2) that the director had a personal interest in the transactions at issue. *Norris, supra.* To be "interested," a director must (1) profit from a transaction with the corporation or usurp a corporate opportunity, (2) buy or sell corporate assets, (3) transact business on behalf of the corporation with another company of which he is also a director or with which the director is significantly financially associated, or (4) transact business for the corporation with a family member. *Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707, 719 (5th Cir.1984).

The FDIC asserts that the control of the corporation by the directors and/or shareholders makes them "interested", as does some Defendants' guarantee of the debt assumed by Bancorp. It alleges that some challenged transactions reflect attempts by Defendants to delay, ignore or conceal the recognition of loan losses. Again the FDIC is long on allegations but short on evidence. However, it does request an opportunity for discovery here.

### COUNT THREE: NEGLIGENT BREACH OF DUTY OF CARE

 "[T]he duty of care requires a director to be diligent and prudent in managing the corporation's affairs." *Gearhart,* 741 F.2d at 720. Count Three's claim for negligent mismanagement alleges that Defendants, in permitting the making of the loans at issue in violation of the bank's lending policies and without questioning the propriety of the regulatory compliance of the loans, failed to exercise any reasonable business judgment and breached their duty to oversee and manage the bank's assets and to conducts its business affairs with that degree of care, skill, diligence, prudence, and good faith that ordinarily would be exercised by prudent directors in like circumstances.

Defendants contend, and the Court agrees, that this claim is barred before March 8, 1988 by limitations and subsequently by the business judgment rule.

### COUNT FOUR: GROSSLY NEGLIGENT BREACH OF DUTY OF CARE

 As a general rule, claims for gross negligence are not barred by the business judgment rule in Texas. *Brown,* 812 F.Supp. at 725, citing *Cates,* 73 Tex. at 622, 11 S.W. at 849 ("injurious practices, abuse of power, and oppression of the part of the company or its controlling agency clearly subversive to the rights of the minority, or a shareholder" are not protected by the business judgment rule) and *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981) (gross negligence is defined as "entire want of care"); *Norris, supra.*

Defendants argue that Count Four fails to state a claim because no duty is owed by Defendants to the shareholders, depositors, creditors, and insurance fund but only to UNB, because the conclusory allegation lacks factual support, and because directors are not responsible for determining regulatory compliance on a loan by loan basis. They emphasize that there is no allegation that the loan was funded after the directors learned that the loan officers had failed to comply with regulations, and mere failure to question is not even negligence.

The FDIC alleges that the examination reports and the minutes of the board of directors reveal a pattern of misconduct over years and the indifference with which they carried out their duties to UNB. Again the FDIC fails to provide factual proof of anything that could constitute more than negligence.

### COUNT FIVE: NEGLIGENCE PER SE

 Defendants insist that no claim has been stated because Defendants in their capacity as directors cannot personally violate lending statutes and regulations that are imposed on banks. Banks lend the money, the bank is the regulated entity, and therefore only banks can violate the statute. *Karle v. National Fuel Gas Distribution Corp.,* 448 F.Supp. 753, 767 (W.D.Pa.1978). Even if Defendants participated in the violation, they are protected by the business judgment rule because such a violation is still negligence. Again, directors are not liable for statutory violations unless they "knowingly violate or

524

knowingly permit" others to violate the statutes. 12 U.S.C. § 93(a).

The FDIC has alleged but has not submitted proof of knowing violation of statutes and regulations that amounts to more than negligence.

### BANGOR PUNTA DOCTRINE

■ The Court agrees with the FDIC that the equitable *Bangor Punta* doctrine, which is based on unjust enrichment, does not apply here. The FDIC notes, with a supporting affidavit, that the sale of the assets of the failed UNB will not satisfy the creditors' or depositors' claims, no less the shareholder's, and that there will be no windfall to the FDIC if it succeeds and recovers damages from Defendants for losses they caused to UNB; instead the amount the FDIC as insurer will have to pay would be reduced, to the advantage only of taxpayers, and under section 3.1 of the contract of sale the FDIC would distribute more funds to depositors and creditors, who or which would recover more on their claims. *See also* 12 U.S.C. § 1821(d)(11)(A); *Meyers v. Moody,* 693 F.2d 1196 (5th Cir.1982) (*Bangor Punta* inapplicable where principal beneficiaries of any recovery would be corporation creditors and not shareholders), *cert. denied,* 464 U.S. 920, 104 S.Ct. 287, 78 L.Ed.2d 264 (1983); *FSLIC v. Reeves,* 816 F.2d 130 (4th Cir. 1987); *FSLIC v. Williams,* 622 F.Supp. 132 (D.Md.1985). The FDIC submits an affidavit supporting its claim that there will be no distribution to the shareholders. Furthermore, the FDIC characterizes the "sale" of stock at the end of 1984 as a transfer of stock, 67% of which was controlled by individual Defendants beforehand, not to a new shareholder, but to a holding company also controlled by Defendants, at a price controlled by them, in order to shift their debt obligations to Bancorp. Essentially the FDIC claims that Defendants were dealing with themselves and that the sale was not an arms length transaction at a fair price. The FDIC questions, for example, the transfer to Bancorp of the controlling shareholders' presale debt in acquiring 16,863 additional shares in anticipation of the transaction, a debt which the holding company was soon

unable to service. FDIC maintains that because Defendants Stephen and Siegert were interested parties, their affidavits supporting the fairness of the purchase price should be disregarded. Furthermore the FDIC requests time for discovery, to which it is clearly entitled, to investigate the factual basis of their opinions. The FDIC also points out that Defendants have failed to show how the effect of their wrongdoing was factored into calculation of the price of the stock. Moreover the FDIC submits documents in support of its contention that the price of the stock was based on fatally flawed earnings projections through 2004.

After reviewing the record and the applicable law, in summary the Court concludes that the FDIC's negligence claims prior to March 8, 1988 are barred by limitations because the adverse domination doctrine does not apply to such claims. Moreover all negligence claims are precluded by the Texas business judgment rule unless the FDIC provides sufficient proof in support of its conclusory allegations to demonstrate something more than negligence and to avoid the rule's protective shield. Accordingly the Court

**ORDERS** that all simple negligence claims are dismissed as a matter of law. Therefore Defendants' assertion that the negligence claims are barred by Texas H.B. No. 1076, which clarifies the law in effect, corroborates and reiterates the Court's ruling. Because the Court has determined that negligence claims are barred, they are no longer part of this suit and the Attorney General is granted leave, if he so desires, to move to dismiss the state's intervention to defend the constitutionality of the statute as moot in this case.

As for allegations of self-interest, knowing participation in wrongdoing, fraud, concealment, abdication, and violations of statutes and regulations, although the FDIC has failed to submit proof to raise a genuine issue of material fact to preclude summary judgment, it is entitled to reasonable time for discovery on these matters. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Fano v. O'Neill,* 806 F.2d 1262, 1266 (5th Cir.1987).

Therefore at this time the Court

**ORDERS** that Defendants' motions for summary judgment (# 29, 43, 44, and 48) on

potential non-negligence claims are DE-NIED but grants leave to Defendants to reurge them after discovery ends on June 11, 1994. The Court

**ORDERS** the FDIC to file by June 18, 1994 an amended complaint deleting all simple negligence claims and all claims for which it has or in reasonable probability will have no proof. Defendants may then move, without further briefing, for reconsideration of their motions for summary judgment. The FDIC shall file a timely response with supporting documentary evidence. Defendants may file a reply within ten days of being served with the response.

Finally, the Sawyer Defendants, heirs of officer Joe Sawyer, move for summary judgment because they claim that the estate was insolvent and the heirs received no assets. Citing appropriate legal authority, the FDIC responds that it has alleged as an asset of the estate, discovered after the estate administration had closed, the executive liability and indemnity insurance policy coverage, noted earlier, which would have passed to the heirs. The FDIC is not contending that the heirs are personally liable, but sues them as personal representatives of the decedent to establish his liability as a prerequisite of recovery under the policy. The Sawyers have not replied. Accordingly their motion for summary judgment on the grounds that the estate was insolvent is **DENIED.**