NATIONAL LOAN INVESTORS LIMITED
PARTNERSHIP *v.* HERITAGE SQUARE
ASSOCIATES ET AL.
(AC 18074)

Landau, Schaller and Daly, Js.

Argued February 23—officially released June 29, 1999

*Mark T. Kelly*, for the appellant (defendant Anne M. Fox).

*Frederic S. Ury,* with whom, on the brief, were *Neal L. Moskow* and *Deborah M. Garskof,* for the appellee (plaintiff).

SCHALLER, J. The defendant Anne M. Fox, a former partner of the defendant Heritage Square Associates (Heritage), appeals from the judgment of the trial court in favor of the plaintiff, National Loan Investors Limited Partnership.[1] On appeal, Fox claims that the trial court improperly applied the federal statute of limitations provided in the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. § 1821 (d) (14) (FIRREA),[2] to conclude that the plaintiff's action was timely filed.[3] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On October 28, 1987, Heritage, acting by its three partners, Joseph P. Wagenseller, Virginia F. Wagenseller and Fox, executed and delivered a promissory note in favor of Mechanics & Farmers Savings Bank (Mechanics & Farmers) in the principal amount of $500,000. The note was secured by a second mortgage

---

[1] Heritage, Fox, Joseph P. Wagenseller and Virginia F. Wagenseller were the defendants named in this matter; however, only Fox appeals from the judgment of the trial court.

[2] Title 12 of the United States Code, § 1821 (d) (14) provides in relevant part: "(A) In general. Not withstanding any provision of any contract, the applicable statute of limitation with regard to any action brought by the Corporation as conservator or receiver shall be (i) in the case of any contract claim, the longer of (I) the 6-year period beginning on the date the claim accrues; or (II) the period applicable under State law . . . .

"(B) Determination of the date on which a claim accrues. For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of (i) the date of the appointment of the Corporation as conservator or receiver; or (ii) the date on which the cause of action accrues."

[3] Additionally, Fox claims that the trial court improperly determined that the running of the state statute of limitations; General Statutes § 42a-3-118 (a); could be tolled as to her by the actions of the other defendants. We do not address this claim, however, because the dispositive issue on appeal is whether the plaintiff is entitled to the benefit of the six year limitations period embodied in 12 U.S.C. § 1821 (d) (14).

on real property located in Fairfield that was to be subdivided into a number of condominium units and sold separately. The partners individually guaranteed payment on the note, together with reasonable attorney's fees, through a separate written agreement. The note, which was payable on or before November 1, 1988, was not paid when due. Thereafter, Heritage made four partial payments after the due date of the note, the last being made on September 4, 1990.[4] On June, 15 1990, Heritage executed a document, which by its terms discharged and released Fox from any and all liabilities incurred by Heritage, including the note, and indemnified her from any claims or debts against Heritage.

On August 9, 1991, Mechanics & Farmers was declared insolvent and taken over by the Federal Deposit Insurance Corporation (FDIC) as its receiver. On October 29, 1993, the plaintiff purchased the note from the FDIC's servicing agent, the Consolidated Asset Recovery Corporation (Consolidated). Thereafter, the first mortgagee foreclosed its mortgage, and Mechanics & Farmers, the FDIC and Consolidated were not able to recover any funds.

On August 10, 1995, the plaintiff began this action to recover the amount owed under the terms of the note. In count one of the complaint, the plaintiff sought recovery against Heritage for breach of contract. In count two, it sought recovery against the defendants Joseph Wagenseller, Virginia Wagenseller and Fox in their capacities as individual guarantors of the note. Among other defenses,[5] the defendants claimed that the plaintiff's cause of action was barred by the six year statute

---

[4] These partial payments totaled $455,000.

[5] The defendants relied on the following four special defenses: (1) the doctrine of laches; (2) the expiration of the statute of limitations; (3) the failure to enter into timely settlement negotiations; and (4) the breach of the covenant of good faith and fair dealing.

of limitations provided for in General Statutes § 42a-3-118.[6] Fox also filed a cross complaint against Heritage and Joseph Wagenseller alleging that she withdrew from the partnership in June, 1990, at which time Heritage and Joseph Wagenseller, jointly and severally, agreed in writing to indemnify and to hold her harmless from any claims or debts that Heritage had previously incurred or might incur in the future.

In its memorandum of decision, the trial court adopted the attorney trial referee's recommendation and rendered judgment in favor of the plaintiff against Heritage and against the Wagensellers and Fox as guarantors of the note, jointly and severally, in the amount of $140,218.71.[7] On the first count of the complaint, the trial court determined that Heritage was liable to the plaintiff for breach of contract. On the second count, the trial court determined that the individual defendants were liable to the plaintiff as guarantors of the note.

With regard to the defendants' statute of limitations special defense, the trial court concluded that the action was not barred by either the state or federal statutes of limitation. The trial court determined that the state statute of limitations was tolled by partial payments made after the due date on the note. Because the last payment was made on September 4, 1990, the plaintiff's claim, dated August 10, 1995, was timely filed within the state six year limitations period. The trial court also determined that even if the state statute of limitations had expired, the plaintiff was afforded a new six year period in which to bring a claim that commenced with

---

[6] General Statutes § 42a-3-118 (a) provides in relevant part: "[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."

[7] This amount includes the principal sum of $77,876, interest in the amount of $48,405, attorney's fees of $11,775 and a per diem amount of $2162.71.

the FDIC's appointment as receiver on August 9, 1991, pursuant to 12 U.S.C. § 1821 (d) (14). As an assignee of the FDIC, the plaintiff was afforded the benefit of the extended six year limitations period, which would allow the proper filing of a claim through August 9, 1998. The trial court therefore accepted the attorney trial referee's conclusion that the present action was not barred by the statutes of limitation found in either § 42a-3-118 or 12 U.S.C. § 1821 (d) (14) and rendered judgment in favor of the plaintiff. The trial court also rendered judgment in favor of Fox against Heritage and Joseph P. Wagenseller on her cross complaint seeking indemnification for any judgment against her. This appeal followed.

On appeal, Fox argues that the statute of limitations provided in 12 U.S.C. § 1821 (d) (14) does not apply to the plaintiff because it is "personal" to the FDIC by virtue of its status as receiver and, therefore, it is not capable of assignment to the plaintiff. The plaintiff argues conversely that by virtue of the assignment, it steps into the shoes of the assignor and, therefore, derives all the rights, remedies and benefits that are incidental to the note, including the extended limitations period provided in 12 U.S.C. § 1821 (d) (14). The dispositive issue for us, therefore, is whether the plaintiff, as an assignee of the FDIC, receives the benefit of the extended six year limitations period provided in 12 U.S.C. § 1821 (d) (14).

Statutory interpretation is a question of law, and, therefore, our review is plenary. *North Haven* v. *Planning & Zoning Commission*, 220 Conn. 556, 561, 600 A.2d 1004 (1991). When interpreting statutes, we rely on well established principles of statutory construction. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of

the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Castagno* v. *Wholean*, 239 Conn. 336, 339, 684 A.2d 1181 (1996). It is axiomatic, however, that when the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary. See *Winslow* v. *Lewis-Shepard, Inc.*, 216 Conn. 533, 538, 582 A.2d 1174 (1990).

Because the federal statute is silent as to whether the extended limitations period applies to assignees who purchase defaulted assets from the FDIC, a number of courts have turned to state law and common-law principles governing assignments to resolve the issue. See *Federal Financial Co.* v. *Hall*, 108 F.3d 46, 48 (4th Cir.), cert. denied, 522 U.S. 858, 118 S. Ct. 157, 139 L. Ed. 2d 102 (1997); *Remington Investments, Inc.* v. *Kadenacy*, 930 F. Sup. 446, 449 (C.D. Cal. 1996); *Federal Financial Co.* v. *Levine*, 248 App. Div. 2d 25, 28, 679 N.Y.S.2d 679, 681 (1998); *Federal Financial Co.* v. *Gerard*, 90 Wash. App. 169, 949 P.2d 412 (1998). Of those courts considering this issue, nearly all have extended the federal limitations period to assignees. See, e.g., *United States* v. *Thornburg*, 82 F.3d 886 (9th Cir. 1996); *Federal Deposit Ins. Corp.* v. *Bledsoe*, 989 F.2d 805 (5th Cir. 1993); *Bruin Holdings* v. *Moderski*, 960 F. Sup. 62 (M.D. Pa. 1996); *Federal Financial Co.* v. *Levine*, supra, 679 N.Y.S.2d 682. In *Bledsoe*, the United States Court of Appeals for the Fifth Circuit noted that "[i]t is an axiomatic principle of statutory construction that in effectuating Congress' intent courts are to fill the inevitable statutory gaps by reference to the principles of the common law." *Federal Deposit Ins. Corp.* v. *Bledsoe*, supra, 810. The *Bledsoe* court found support

for the proposition of filling gaps within the federal statutes with state common-law principles in Justice Jackson's concurring opinion in *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956 (1942) (Jackson, J., concurring), where he stated that " '[t]he Federal courts have no general common law . . . [b]ut that is not to say that wherever we have occasion to decide a Federal question which cannot be answered from Federal statutes alone we may not resort to all of the source material of the common law . . . .' " *Federal Deposit Ins. Corp.* v. *Bledsoe,* supra, 810, quoting *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.,* supra, 469–72.

In Connecticut, it is well established in the common law that an assignee stands in the shoes of the assignor. See *Leonard* v. *Bailwitz,* 148 Conn. 8, 13, 166 A.2d 451 (1960); *Mall* v. *LaBow,* 33 Conn. App. 359, 363, 635 A.2d 871 (1993), cert. denied, 229 Conn. 912, 642 A.2d 1208 (1994); *Second Exeter Corp.* v. *Epstein,* 5 Conn. App 427, 430, 499 A.2d 429 (1985). Because the note in the present case is a negotiable instrument; see General Statutes § 42a-3-104; we look to Connecticut's Uniform Commercial Code to determine the rights of an assignee of a note. The above common-law principle is codified by General Statutes § 42a-3-203 (b), which provides that the "[t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument . . . ." Because the plaintiff stands in the shoes of the FDIC by virtue of the assignment, the plaintiff is vested with all of the FDIC's rights, remedies and benefits that are incidental to the note. Thus, it would appear that the plaintiff should also receive the benefit of the extended limitations period. See *National Enterprises, Inc.* v. *Caccia,* 252 App. Div. 2d 398, 675 N.Y.S.2d 350 (1998); *Jackson* v. *Thweatt,* 883 S.W.2d 171 (Tex. 1994); *Federal Financial Co.* v. *Gerard,* supra, 90 Wash. App. 177. The policy underlying this rule is "to assure

the holder in due course a free market for the paper"; General Statutes § 42a-3-203, comment 3; and is consistent with the purpose and intent of FIRREA.

In 1989, Congress established FIRREA to " 'facilitate the efficient recovery of the assets of failed institutions.' . . . To accomplish the goal of recovering assets, the statute affords the [FDIC] an expanded Statute of Limitations which runs from the date of its appointment as conservator or receiver of a failed banking institution . . . ." (Citations omitted.) *Federal Financial Co.* v. *Levine*, supra, 679 N.Y.S.2d 681. The extended statute of limitations serves as "a mechanism for providing the receiver with an adequate time to pursue those claims which the financial institution could not successfully pursue prior to its failure." Id. Furthermore, the drafters of the statute of limitations provision intended it to "be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods." 135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of Senator Donald Riegle).

Commenting on Congress' intent in enacting FIRREA, the Fifth Circuit noted that "to hold that assignees are relegated to the state statute of limitations would serve only to shrink the private market for the assets of failed banks. It would require the FDIC to hold onto and prosecute all notes for which the state statute of limitations has expired because such obligations would be worthless to anyone else. This runs contrary to the policy of allowing the FDIC to rid the federal system of bank assets." *Federal Deposit Ins. Corp.* v. *Bledsoe*, supra, 989 F.2d 811. Thus, "[e]xtending the benefit of the Federal Statute of Limitations to purchasers of defaulted assets furthers the statute's purpose because it enhances the marketability of these assets by permitting purchasers a longer period of time to bring suit

. . . ." (Citations omitted.) *Federal Financial Co.* v. *Levine,* supra, 679 N.Y.S.2d 681.

Fox argues, however, that there is another fundamental component of the common law of assignments that circumscribes the common-law maxim that the assignee stands in the shoes of the assignor. The maxim, more fully stated, provides: "Unless a contrary intention is manifest or inferable, an assignment ordinarily carries with it all rights, remedies and benefits which are incidental to the thing assigned, *except those which are personal to the assignor and for his benefit only.*" (Emphasis added.) 6A C.J.S. Assignments § 76. Fox claims that the statute makes clear that the incidental benefit of an extended limitations period is in fact personal in nature and for the benefit of the FDIC when acting as conservator or receiver.

The argument Fox posits is based on the analysis adopted by the United States District Court for the Eastern District of Virginia in *WAMCO, III, Ltd.* v. *First Piedmont Mortgage Corp.,* 856 F. Sup. 1076, 1081 (E.D. Va. 1994). The court in *WAMCO, III, Ltd.,* held that the right to rely on the extended limitations period arises solely from the Resolution Trust Corporation's status as conservator or receiver and is therefore a personal benefit that is not assignable. We are not persuaded by this reasoning. Rather, we adopt the position taken by the Appellate Division of the New York Supreme Court in *Federal Financial Co.* v. *Levine,* supra, 679 N.Y.S.2d 682.

The court in *Levine* noted that the rationale utilized in *WAMCO, III, Ltd.,* "has not been followed by the other appellate courts which have ruled on this issue, including the Virginia State Supreme Court [see *Union Recovery Ltd. Partnership* v. *Horton,* 252 Va. 418, 424, 477 S.E.2d 521, cert. denied, 520 U.S. 1167, 117 S. Ct. 1430, 137 L. Ed. 2d 539 (1997); see also *Global Financial Services, Inc.* v. *Duttenhefner,* 575 N.W.2d 667 (N.D.

1996); *Twenty First Century Recovery, Ltd.* v. *Mase*, 279 Ill. App. 3d 660, 216 Ill. Dec. 513, 665 N.E.2d 573 (1997); *Federal Financial Co.* v. *Gerard,* supra, 90 Wash. App. 169]. These courts have concluded that the Federal receiver's right to sue within the extended limitations period is inherent in the possession of the instruments it holds, and is among the rights, remedies and benefits which are incidental to the instrument assigned, rather than merely a right personal to the assignor only. [See *Union Recovery Ltd. Partnership* v. *Horton,* supra, 424; *Global Financial Services, Inc.* v. *Duttenhefner,* supra, 667; *Federal Financial Co.* v. *Gerard,* supra, 169.] The *WAMCO* court's reasoning has also been rejected by the Fourth Circuit Court of Appeals, which recently applied Virginia law to reach the conclusion that the FIRREA limitations period applies to assignees." *Federal Financial Co.* v. *Levine,* supra, 679 N.Y.S.2d 681–82; see *Federal Financial Co.* v. *Hall,* supra, 108 F.3d 46.

The court in *Levine* concludes by stating that "the sound weight of authority supports extending the Federal Statute of Limitations to purchasers of defaulted notes, and rejecting the minority view that the Federal limitations period is personal to the receiver and does not inure to the benefit of assignees." Id., 682. We likewise agree that to interpret the federal limitations period as personal to the FDIC would contravene Congress' intent in enacting FIRREA. We conclude therefore that because the plaintiff stands in the shoes of the FDIC by virtue of the assignment, the plaintiff is vested with all of the FDIC's rights, remedies and benefits that are incidental to the note including the benefit of the extended limitations period. The trial court determined correctly that the plaintiff, as assignee of the FDIC, timely filed this action within FIRREA's six year limitations period that was extended to August 9, 1998.

The judgment is affirmed.

In this opinion the other judges concurred.