[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION OF DEFENDANT WHITE INDUSTRIAL TOOL, INC. FOR SUMMARY JUDGMENT
This case presents an issue of first impression in Connecticut — whether to toll the statute of limitations for actions brought against a manufacturer under the Connecticut Product Liability Act, sections 52-572m et seq. of the general statutes, until a plaintiff discovers the identity of the manufacturer. Courts in other states have repeatedly wrestled with this issue, but the present case appears to be the first time a Connecticut court has addressed it.
Plaintiff Vincent Ives owns a gas station and garage in Washington, Connecticut. He claims that a socket he purchased from the defendant Michael Bowe broke and injured him on March 30, 1994. On February 26, 1997, the plaintiff filed a complaint against Bowe and the defendant NMTC, Inc., which he claimed had either manufactured the socket or distributed it to Bowe. After NMTC brought a third-party complaint seeking indemnification from the manufacturer of the socket, White Industrial Tool, Inc. ("White"), the plaintiff amended his complaint on March 25, 1999, to add White as an original defendant. The fourth count of the amended complaint dated, brought against White under the Product Liability Act, alleges that the socket was defective and unreasonably dangerous when sold. The fifth count, seeking damages against White under Connecticut Unfair Trade Practices Act, sections 42-110a et seq. of the General Statutes ("CUTPA"), alleges that the socket was, sold as a new tool when it was actually used. White has now moved for summary judgment claiming that the plaintiffs claims against it are barred by the statute of limitations. For the reasons stated below, the court grants the motion for summary judgment.
A court will grant summary judgment if, viewing the evidence in the light most favorable to the non-moving party, Elliot v.Waterbury, 245 Conn. App. 385, 715 A.2d 27 (1998), there is no genuine issue of material fact and the moving party would be entitled to a directed verdict on those facts. Batick v. Seymour,186 Conn. 632, 647, 443 A.2d 471 (1982). A material fact is one that will make difference in the result of the case. Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, CT Page 16175573 A.2d 699 (1990). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Gupta v. NewBritain General Hospital, 239 Conn. 564, 582, 687 A.2d 111
(1996). A party opposing summary judgment, however, "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of] a motion for summary judgment." (Citations omitted; internal quotations marks omitted.) Water WayProperties v. Colt's Mfg. Co., 230 Conn. 660, 664-65,646 A.2d 143 (1994). A court should grant summary judgment "if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "Summary judgment may be granted where the claim is barred by the statute of limitations." Altfeter v.Naugatuck, 53 Conn. App. 791, 801, 732 A.2d 207 (1999).
In the present case, the defendant White claims that the plaintiffs claims against it are barred by the statute of limitations because plaintiff brought the case more than three years after being injured. The relevant statute of limitations for the products liability claim is § 52-577a (a) of the general statutes, which provides that
 No product liability claim as defined in section 52-572m
shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered except that, subject to subsections (c), (d) and (e), no such action may be brought against any party nor may any party be impleaded pursuant to subsection (b) later than ten years from the date that the party last parted with possession or control of the product.
The statute of limitations for the CUTPA claim is general statutes § 42-110g (f), which provides that "[a]n action under this section may not be brought more than three years after the occurrence of a violation of this chapter."
Deciding this issue is a matter of statutory construction. "As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." In re
CT Page 16176Baby Z., 247 Conn. 474, 498, 724 A.2d 1035 (1999);Federal Deposit Ins. Corp. v. Peabody, NE., Inc., 239 Conn. 93,102, 680 A.2d 1321 (1996). As our Supreme Court has instructed, "our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." Castagnov. Wholean, 239 Conn. 336, 339, 684 A.2d 1181 (1996). "It is axiomatic, however, that when the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary." National Loan Investors v.Heritage Square Assoc., 54 Conn. App. 67, 71-72, 733 A.2d 876
(1999).
There is no dispute here that the plaintiff brought this action more than three years after sustaining and discovering his injuries. Plaintiff claims that since he "was not capable of suing White prior to ascertaining who [it was] and what [its] connection to the subject product was, " there are "genuine issues of material fact as to when the plaintiffs actionable harm against the defendant arose." (Plaintiffs Objection to Defendant, White Industrial Tool, Inc.'s Motion for Summary Judgment, dated August 26, 1999, pp 5-6.)
THE CUTPA CLAIM
Our higher courts have already addressed the statute of limitations claim on the CUTPA count. In Fichera v. Mine HillCorporation, 207 Conn. 204, 212, 541 A.2d 472 (1988), the court held that the statutory language of § 42-110a (f) "precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." The period of limitations for claims brought under the Unfair Trade Practices Act begins on the date that the unfair practice occurs. Even claims of fraudulent concealment do not toll the CUTPA statute. "Since CUTPA violations are defined in General Statutes 42-110b to include "deceptive acts or practices in the conduct of any trade or commerce, ' it is evident that the legislature intended that the perpetrators of such fraudulent practices, as well as other CUTPA violators, should be permitted to avail themselves of the statute of limitations defense provided by 42-110g (f)." Id. at 216. CT Page 16177
THE PRODUCT LIABILITY CLAIM
"In Connecticut, a product liability cause of action accrues when a plaintiff suffers actionable harm." Catz v. Rubenstein,201 Conn. 39, 43, 573 A.2d 98 (1986). An actionable harm occurs when the plaintiff discovers, or should discover through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." Campagne v.Raybestos-Manhattan, Inc., 212 Conn. 509, 521, 562 A.2d 1100. Specifically, actionable harm occurs "when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action." Lambertv. Stovell, 205 Conn. 6, 529 A.2d 710 (1987). The plaintiff maintains that "[t]he key inquiry must be when the plaintiff knew, or should have known, of the facts which constituted an actionable harm."
Applying the above criteria, the plaintiff argues that he did not suffer "actionable harm" at the hands of the defendant White until he discovered "that the defendant's conduct caused his injury." The plaintiff argues that the date on which he discovered the essential elements of the cause of action and, therefore, the proper date from which to measure the three-year statute of limitations would be the date he first learned that White was the manufacturer of the socket. The plaintiff thus relies on the so-called "discovery rule" to avoid the statute of limitations. As applied by some courts, that rule states that the limitations period starts to run not from the date the tortious act occurred — here 1994, but from the date that a plaintiff discovers his injury and, in some jurisdictions, the identity of the party causing the injury (here by manufacturing the socket).
Although Connecticut does, by legislation, toll the product liability statute of limitations when a party fraudulently conceals its conduct; general statutes § 52-595; no reported Connecticut cases have considered the application of the discovery rule to discovery of the defendant's identity when there is no claim of fraudulent concealment; nor is the court aware of any unreported decisions from the Superior Court on this issue.
The two prongs of "actionable harm" test used by Connecticut courts to determine when the statute of limitations begins to run — when the plaintiff discovers (1) that he has been injured and CT Page 16178 (2) that the defendant's conduct caused this injury — are similar to that employed by many other jurisdictions, including some that do and some that do not toll the statute of limitations while the identity of the defendant is unknown. See McDaniel v.LaSalle Ambulance Service, Inc., 64 Ill Dec. 606, 608,108 Ill. App.3d 1042, 1045, 440 N.E.2d 158, 160 (App.Ct. 1982) ("A cause of action accrues when the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful acts of another." — Suit against physician dismissed on statute of limitations grounds since there was no fraudulent concealment.); Borello v.US. Oil Company, 130 Wis.2d 397, 400, 406-407, 388 N.W.2d 140,141, 144 (1986) ("[A] period of limitations within which an action may be commenced is computed from the time that the cause of action accrues. . . . [A] cause of action does not accrue until the nature of the injury and the cause — of at least a relationship between the event and injury — is or ought to have been known to the claimant." — Statute of limitations tolled until homeowner discovered the identity of furnace manufacturer.)
As the court explained in Catz v. Rubenstein, it is no coincidence that the legislature adopted a test used by other states for the running of the statute of limitations and that our courts have interpreted our statute in accord with the decisions of other states. The Catz court noted that the legislature adopted discovery language when it enacted § 52-584:
 The formulation of 52-584[1] which used the term "injury" was adopted by the legislature in 1957. The language in the statute in effect prior to that time provided that an action could be brought only within one year "from the date of the act or omission complained of." General Statutes. The testimony in 1957 before the General Law Committee of the legislature, which considered the predecessor to our present 52-584, indicates that the use of the term "injury" was a conscious reaction to, and an attempt to alleviate the draconian effect of two cases. In those cases the United States Second Circuit Court of Appeals and this court concluded that the language "act or omission complained of in 8324 required a holding that the statute of limitations began running on the date of the defendant's negligence and that a plaintiffs cause of action could be barred before the plaintiff suffered any harm and therefore before a cause of action had accrued. The use by the legislature of the word "injury" rather than "act or omission" in the initial part of CT Page 16179 52-584 was obviously a deliberate choice, as the words "act or omission" were used in the second portion of the statute pertaining to the three year period of limitation.
(Internal citations omitted.) Catz v. Rubenstein,201 Conn. at 46-47.
Because of that history, the Catz court then considered the analysis of other jurisdictions in adopting the actionable harm test.[2] As noted above, however, the various jurisdictions to which the Catz court looked do not agree on whether to apply the discovery rule to ascertaining the identity of the defendant. The courts of other states seem to take three approaches to this issue.
According to the Washington,[3] Wisconsin and New Hampshire Supreme Courts, a majority of courts considering the issue have held that "a cause of action will not accrue under the discovery rule until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his conduct may have been caused by the defendant's conduct." Borrello v. US. Oil Company,130 Wis.2d at 410, 388 N.W.2d at 145, quoting Raymond v. Eli Lilly andCompany, 117 N.H. 164, 170-171, 371 A.2d 170 (1977).[4]
A significant number of courts, however (and this court has been unable to verify whether theirs is actually a "minority" view), apply the discovery rule to delay the accrual date of a cause of action while a plaintiff is unaware of its injury and its negligent cause, but not until a plaintiff learns the identity of the defendant. See, e.g., Jolly v. Eli Lilly andCompany, 44 Cal.3d 1103, 751 P.2d 923. 245 Cal. Rptr 658 (1988) (plaintiffs inability to identify particular manufacturer of diethylstilbestrol (DES) fungible drug that caused her injury did not toll statute of limitations).[5]
A third approach, allied to the second, rejects any delay in accrual of the cause of action, but allows plaintiffs to file an anonymous "John or Jane Doe" complaint naming a fictitious party during the period of limitations and then subjects plaintiffs to a standard of reasonableness in their efforts to learn the identity of the actual tortfeasor.[6] In Ayala v. Smith,236 Conn. 89, 90, 671 A.2d 345 (1996), the Supreme Court agreed whether to consider "under our rules of practice, a plaintiff may maintain an action against a defendant whose identity is unknown CT Page 16180 to the plaintiff and is therefore referred to as "John Doe."' After the plaintiff in Ayala conceded at oral argument that it was unlikely ever to be able to identify the unknown defendant, however, the court dismissed the case as moot. In the present case, however, the plaintiff did not seek to bring an action against a "John Doe" within the period of the statute of limitations.[7]
The various reasons cited by courts for applying the discovery rule to the identity of the defendant do not seem applicable to this court in the context of this case. Some courts appear to view it as a matter of simple fairness that plaintiffs not lose their right to recover from a defendant when plaintiffs have in good faith sought to ascertain that party's identity;see, e.g., French v. Audley, 123 N.H. at 480, 464 A.2d at 282: "[A] plaintiff should not be prejudiced by a delay occasioned by the fact that he is unaware of his injury or that he does not know his adversary. Our decision today is consistent with a strong policy in favor of adjudication of claims on their merits." The Washington Court of Appeals held that it is particularly appropriate to apply the discovery rule to the identity of the defendant in products liability cases: "A person injured by a defective product simply cannot be said to have discovered the cause of injury in a legally enforceable sense until he or she discovers who manufactured or supplied the product or is otherwise responsible for the injury." Orear v.International Paint Company, 59 Wn. App. at 257,796 P.2d at 764.
Neither rationale seems applicable to the present case, however. There does not appear any unfairness to the defendant, who will still have his claim heard under a strict liability statute against the original seller and distributor, and any resources of the manufacturer White will be available to the plaintiff through the indemnification complaint. This is not a situation where a plaintiff was remediless until he knew who manufactured the product that injured him. The injuries that plaintiff sustained were sufficient to put him on notice that his rights had been violated. Within the period of the statute of limitations he was able to identify and sue both the original seller and distributor.
The two parts of the "actionable harm" test are the plaintiffs discovery "that he has been injured" and "that the defendant's conduct caused that injury." As the conflicting cases CT Page 16181 in other jurisdictions construing similar terminology show, this language does not compel a decision either way as to whether to extend the discovery to include not just the injury but also the party causing the injury. The statutory language that this test explicates, however, refers to a plaintiffs discovery of "the injury, death or property damage." That language is clear and the court finds no basis in law or policy to adopt a contrary rule here expanding its scope.[8] The plaintiff filed this action against the defendant White more than three years after sustaining and discovering his injuries, past the period of limitations for both causes of action. Accordingly, the motion for summary judgment of the defendant White is granted as to both the fourth and fifth counts.
STEPHEN F. FRAZZINI, JUDGE