**Dennis JOSLIN**

v.

**Adrienne GROSSMAN, et al.**

**No. 3:95 CV 2590 (JGM).**

United States District Court, D. Connecticut.

March 13, 2000.

Christopher J. Lutzo, Meister Seelig Friedman & Kasindorf, New York City, for Dennis Joslin, plaintiffs.

Patrick Walter Begos, Begos & Horgan, Byron Paul Yost, Westport, CT, for M. William Grossman, Trustee, Adrienne Grossman, Trustee, John Doe, Trustee, Mark Stern, Trustee, Herman Grossman, Rabbi, Rabbi Herman Grossman, Trustee, Joel Grossman, Joel Grossman, Trustee, Rosalind Grossman, Trustee of a Trust f/b/o Adeinne Grossman, defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

MARGOLIS, United States Magistrate Judge.

On December 5, 1995, the Federal Deposit Insurance Corporation ["FDIC"] filed a complaint against M. William Grossman and Adrienne Grossman, Trustee, in this fraudulent conveyance action. (Dkt.# 1). The FDIC assigned all of its rights, title and interest in this action to Dennis Joslin ["Joslin"] on April 9, 1996, and Joslin was substituted for plaintiff on May 6, 1996. (Dkt. # 15 at ¶ 2 & Exh. A). On August 2, 1999, Joslin filed a revised amended complaint against M. William Grossman, Adrienne Grossman, Rabbi Herman Grossman, Trustee, Mark Stern, Esq., Trustee, and Joel Grossman, Trustee. (Dkt.# 47).

In his Revised Amended Complaint, plaintiff alleged M. William Grossman guaranteed a $700,000 loan made by Central Bank of Hartford, Connecticut to Nutmeg Financial Services, Inc. of Westport, Connecticut. (*Id.* at ¶¶ 2, 20 & Dkt. # 64, Exh. A.). Plaintiff claims that the loan went into default in February 1991, and at that time, M. William Grossman fraudulently transferred personal funds and securities approximating $400,000 to a trust for the benefit of Adrienne Grossman in order to avoid his obligation under the guaranty. (Dkt. # 47 at ¶ 3) The FDIC was appointed receiver of Central Bank on October 17, 1991 and first became aware of M. William Grossman's transfer of property on approximately April 30, 1993. (*Id.* at ¶¶ 20 & 22 & Dkt. # 64, Exh. A).

This case was originally assigned to U.S. District Judge Janet B. Arterton, who referred it to Magistrate Judge Thomas P. Smith. (Dkt.# 3). M. William Grossman filed for Chapter 11 bankruptcy, and on May 29, 1997, Magistrate Judge Smith dismissed the case without prejudice to reopen. (Dkt.# 36). Plaintiff filed a motion to reopen the case on February 10, 1999, which was granted on May 20, 1999 by Magistrate Judge Smith. (Dkt.# 37). By the parties' stipulation, filed October 19, 1999, and approved by Judge Arterton on the next day, the action was dismissed as to M. William Grossman, Rabbi Herman Grossman, Joel Grossman, and Mark Stern, Esq; and Rosalind Grossman was substituted for these defendants (Dkt.# 57).

Currently, only the named defendants in this action are Adrienne Grossman and Rosalind Grossman. (Dkt.# 58). On November 17, 1999, the parties consented to trial before this Magistrate Judge. (Dkt.# 62). Pending before the Court is defendants' Motion to Dismiss, with brief in support, filed October 27, 1999 (Dkts. 59–60), to which plaintiff filed a brief in opposition on December 10, 1999 (Dkt.# 64),[1] and defendants filed a reply

---

1. Attached to plaintiff's brief were a copy of M. William Grossman's FDIC Affidavit of Financial Condition with cover letter and a copy of the Letter of Guarantee. (Exh. A).

brief on December 15, 1999. (Dkt.# 65).[2] For the reasons stated below, defendants' Motion to Dismiss is *denied.* ·

## I. DISCUSSION

Defendants assert that plaintiff failed to state a claim upon which relief may be granted due to the untimely commencement of this action. (Dkts. 59–60). It is proper to raise the defense of the statute of limitations through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Bennett v. Clark,* 69 F.Supp.2d. 809, 810 (E.D.Va.1999) (citation omitted). The court must decide whether the time alleged in the complaint indicates that the cause of action has not been brought within the statute of limitations. *See Cito v. Bridgewater Township Police Dept.,* 892 F.2d 23, 25 (3d Cir.1989), *rehearing denied,* (3d Cir.1990) (citations omitted). In reviewing a motion to dismiss, the Court must accept all well-pleaded material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996). A motion to dismiss for failure to state a claim should be denied " 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Green v. Maraio,* 722 F.2d 1013, 1015 (2d Cir. 1983) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). On a motion to dismiss, the issue is not whether the plaintiff is likely to prevail ultimately, but whether he is entitled to offer evidence to support the claims. *See Branham,* 77 F.3d at 628.

Defendants contend that the latest date this action could have been initiated was October 16, 1995, but the action was not commenced until December 5, 1995, and therefore is time barred. (Dkt. # 60 at 1–4). In response, plaintiff argues that defendants have misconstrued the extended statute of limitations provided under the Financial Institutions Reform, Recovery and Enforcement Act ["FIRREA"]. 12 U.S.C. § 1821 *et seq.* (Dkt. # 64 at 3–6).

Initially, it must be determined whether the claim was viable under Connecticut law at the time the FDIC was appointed receiver on October 17, 1991. "If the claims would have been timebarred at the time that the corporation is acquired by a United States agency, the claims cannot be revived by that acquisition." *FDIC v. Benson,* 867 F.Supp. 512, 518 (S.D.Tex. 1994) (citations omitted). The statute of limitation for fraudulent transfer actions brought pursuant to CONN. GEN. STAT. § 52–552, and in effect at the time the alleged fraudulent transfer occurred in February 1991, was set forth in CONN. GEN. STAT. § 52–577 which provided a three year limitation period. However, § 52–552 was repealed and replaced by the Uniform Fraudulent Transfer Act ["UFTA"], CONN. GEN. STAT. §§ 52–552a through 52–552j in October 1991. The UFTA provides:

> A cause of action with respect to a fraudulent transfer or obligation under sections 52–552a to 52–552l, inclusive, is extinguished unless action is brought: (1) Under subdivision (1) of subsection (a) of section 52–552e, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; (2) under subdivision (2) of subsection (a) of section 52–552e or subsection (a) of section 52–552f, within four years after the transfer was made or the obligation was incurred; or (3) under subsection (b) of section 52–552f, within one year after the transfer was made or the obligation was incurred.

*See* CONN. GEN. STAT. ANN. § 52–552j. It is established that "the statute of limitations

---

**2.** Attached to defendants' brief was two Connecticut decisions regarding fraudulent conveyance actions. (Exhs. A & B).

in effect at the time an action is filed governs the timeliness of the claim." *Connecticut Nat'l Bank v. D'Onofrio,* 46 Conn. App. 199, 207, 699 A.2d 237, 242 (1997), *cert. denied,* 243 Conn. 926, 701 A.2d 657 (1997) (holding § 52–552j applied retroactively to fraudulent conveyance claims). Statutes of limitation are presumed to apply retroactively because they "are generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action." *Id.* (citations omitted). "[L]egislation that affects only matters of procedure is presumed to be applicable to all actions, whether pending or not, in the absence of any expressed intention to the contrary." *Id.* (citations omitted). Therefore, the statute of limitations established in § 52–552j governed the alleged fraudulent transfer cause of action when the FDIC was appointed receiver of Central Bank on October 17, 1991.

 The alleged fraudulent transfer occurred in February 1991, and the obligation on the guaranty also occurred in February 1991 when Nutmeg Financial Services defaulted on the note. The longest period of time in which the FDIC had to file a claim against M. William Grossman under Connecticut law was four years from the date the transfer or obligation occurred. This period lapsed in February 1995. Alternatively, the limitation period runs for one year from the date the transfer or obligation was discovered on April 30, 1993. This period lapsed on April 29, 1994. Therefore, the claim was viable under Connecticut law when the FDIC was appointed receiver and acquired the bank's interest in the guaranty on October 17, 1991.

 Although FIRREA's statute of limitations does not revive stale state law claims acquired by the FDIC, if a claim is viable under state law at the time the FDIC acquires it, the claim is not time barred. *See Benson,* 867 F.Supp. at 518–19. The federal statute of limitations in FIRREA for claims brought by the FDIC preempts a state statute; the state statute of limitations ceases to operate and the federal period of limitations begins to run. *See id.* at 519; *FDIC v. Benjes,* 815 F.Supp. 1415, 1416–17 (D.Kan.1993). Therefore, the statute of limitations provided by FIRREA is the proper limitation period to apply to the FDIC's fraudulent transfer claim. FIRREA provides:

(14) Statute of limitations for action brought by conservator or receiver

(A) ...the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be-...

 (ii) in the case of any tort claim (other than a claim which is subject to section 1441a(b)(14) of this title) [3], the longer of-

 (I) the 3–year period beginning on the date the claim accrues; or

 (II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of-

 (i) the date of the appointment of the Corporation as conservator or receiver; or

 (ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14). The next step is to determine whether the FIRREA's statute of limitations is applicable to Joslin's claim, as assignee of the FDIC.

"Because the [FIRREA] is silent as to whether the extended limitations period applies to assignees who purchase default-

---

**3.** 12 U.S.C. § 1441a(14) is not applicable to the present cause of action because it applies to claims brought under 12 U.S.C. § 1821

based on fraud for which the statute of limitation under § 1821(d)(14)(A)(ii) had expired prior to December 17, 1993.

ed assets from the FDIC, a number of courts have turned to state law and common-law principles governing assignments to resolve the issue." *National Loan Investors Ltd. Partnership v. Heritage Square Assocs.*, 54 Conn.App. 67, 72, 733 A.2d 876, 879 (1999). The Fifth Circuit relied on common law principles to fill in the statutory gap, and found that "[a]n assignee stands in the shoes of his assignor." *FDIC v. Bledsoe*, 989 F.2d 805, 810 (5th Cir.1993). The Fourth Circuit, however, rejected the rationale of *Bledsoe*, and determined that an assignee does not automatically enjoy the benefit of the FIRREA statute of limitations. *See Federal Financial Co. v. Hall*, 108 F.3d 46, 49–50 (4th Cir.), *cert. denied*, 522 U.S. 858, 118 S.Ct. 157, 139 L.Ed.2d 102 (1997). "Accordingly, we look to state law, ... to determine the statute of limitations governing the rights of assignees of the [FDIC]." *Id.* at 50 (citing *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83–87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994)).

▬▬▬▬ Connecticut has followed the holding in *Hall*, and looked to its own law governing the rights of assignees of the FDIC. *See National Loan Investors Ltd. Partnership*, 733 A.2d at 879–80; *Franklin Credit Management Corp. v. Nicholas*, No. CV 980546721, 1999 WL 293925 at *7 (Conn.Super.Apr.27, 1999). It is well established, in Connecticut, "that an assignee stands in the shoes of the assignor." *National Loan Investors Ltd. Partnership*, 733 A.2d at 879 (numerous citations omitted). "Because the plaintiff stands in the shoes of the FDIC by virtue of the assignment, the plaintiff is vested with all the FDIC's rights, remedies and benefits that are incidental to the note. Thus, it would appear that the plaintiff should also receive the benefit of the extended limitations period." *Id.* at 880 (numerous citations omitted). Therefore, Joslin, as an assignee of the FDIC, receives the benefit of the FIRREA's extended statute of limitations.

Secondly, it must be determined which provision of the statute of limitation of FIRREA applies to Joslin's claim: the longer of either the 3–year period beginning on the date the claim accrued, or the applicable state law period. The date on which the claim accrued must be determined first, it being the later of either the date the FDIC was appointed receiver or the date the cause of action accrued. The FDIC was appointed receiver on October 17, 1991, giving the plaintiff until October 16, 1994 to commence this action under part (d)(14)(A)(ii)(I) of FIRREA unless the cause of action accrued at a later date.

▬▬▬▬ Plaintiff argues that the cause of action accrued when the FDIC discovered the alleged wrongdoing on April 30, 1993. (Dkt. # 64, at 7–9). The express legislative intent in the enactment of FIRREA, the language of Connecticut's UFTA, and Connecticut case law all support plaintiff's position. The legislative intent behind FIRREA was to promote banking stability and "to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that otherwise would have been lost due to the expiration of hitherto applicable limitations periods." *Resolution Trust Corp. v. S & K Chevrolet*, 868 F.Supp. 1047, 1056 (C.D.Ill.1994)(quoting 135 Cong. Rec. § 10205 (daily ed. Aug. 4, 1989)(statement of Sen. Riegle)); *see UMLIC–Nine Corp. v. Lipan Springs Dev. Corp.*, 5 F.Supp.2d 1152, 1158 (D.Colo.1998), *aff'd*, 168 F.3d 1173 (10th Cir.), *cert. denied*, —— U.S.——, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999). Congress enacted FIRREA for the purpose of providing the federal government with an extended statute of limitations to minimize loss to the federal insurance fund. *See UMLIC–Nine Corp.*, 5 F.Supp.2d at 1158.

▬▬▬ Connecticut's UFTA provides the date of discovery as an alternative accrual date for a cause of action on a fraudulent transfer claim. *See* CONN. GEN. STAT. § 52–552j. Under FIRREA this date would be the date the cause of action accrues when

it is later than the date the FDIC is appointed receiver. *See* 12 U.S.C. § 1821(d)(14)(B). Taking the legislative intent of Congress when FIRREA was enacted together with the option under the Connecticut statute for the discovery of the fraudulent transfer to trigger the cause of action, indicates that FIRREA extends the one year limitation period under state law to three years, thus accomplishing the purpose of FIRREA. *See Resolution Trust Corp.*, 868 F.Supp. at 1056 (statement of Sen. Riegle).

Connecticut case law holds "[t]he three year statute of limitations for [common law] fraud begins to run when the plaintiff becomes aware of the fraud." *Coles v. Cohen*, No. CV 9762750S, 1997 WL 242569 at *2 (Conn.Super. May 1, 1997)(citing *Travelers Indemnity Co. v. Rubin*, 209 Conn. 437, 443–44, 551 A.2d 1220 (1988)). This further supports the reasoning that the same rule would apply to a fraudulent conveyance action brought under the FIRREA statute of limitations, and that the statute of limitations would begin to run when the transfer is discovered by the plaintiff. *See Benson*, 867 F.Supp. at 519 (stating "[t]he claim accrues [under FIRREA] on the date the FDIC is appointed receiver or when the FDIC *discovers* the alleged wrongdoing.")(emphasis added); *see also In re Colonial Realty Co.*, 168 B.R. 506, 509 (Bankr.Ct.D.Conn.1994). The FDIC was appointed receiver of Central Bank on October 17, 1991 but did not discover M. William Grossman's alleged fraudulent conveyance until approximately April 30, 1993. (Dkt. # 47 at ¶¶ 20 & 22). Therefore, the cause of action accrued when the FDIC discovered the transfer on approximately April 30, 1993. Applying FIRREA, the statute of limitations would have lapsed on April 29, 1996. Thus, the complaint, filed on December 5, 1995, commenced the action well within the statutory limitations period. (Dkt.# 1).

Defendants also argue that the amended complaint should be dismissed because the state law "provision delaying accrual to the date of discovery is applicable only to a claim arising out of a transfer made with an actual intent to hinder or defraud creditors," and that plaintiff failed to plead sufficient facts alleging fraudulent intent. (Dkt. # 60 at 4). Federal Rule of Civil Procedure 9(b) provides "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Plaintiff's complaint alleges M. William Grossman was the guarantor on a $700,000 note; that M. William Grossman transferred funds to avoid his obligation; and that the FDIC, as receiver of Central Bank, was defrauded by the transfer. (Dkt. # 47 at ¶¶ 2, 3, 14, 16, 17, 21 & 29). This Court finds upon review of the complaint that the plaintiff has alleged fraud with sufficient particularity to survive this motion to dismiss. *See FDIC v. Brown*, 812 F.Supp. 722, 727 (S.D.Tex.1992) (requiring FDIC to replead and allege specifically, *inter alia*, the defendant's duty, how it was breached and how the plaintiff was damaged).

Alternatively, defendants contend that the complaint is deficient and should be dismissed for "failure to allege facts from which the Court could conclude that the FDIC could not reasonably have discovered the Transfer earlier." (Dkt. # 60 at 4). This is a question of fact to be determined by the trier of fact, and is not a proper basis for granting a motion to dismiss. *See, e.g., Competitive Assoc., Inc. v. Fantastic Fudge, Inc.*, 58 F.R.D. 121, 123–24 (S.D.N.Y.1973)( motion to dismiss denied, in part, because question of fact existed as to the time plaintiffs should have discovered untrue statements contained in prospectus for sale of securities).

## II. CONCLUSION

In conclusion, for the reasons stated above, defendants' Motion to Dismiss

(Dkt.# 59) is *denied.*[4]

---

**4.** Counsel should contact this Magistrate Judge's Chambers to arrange a settlement conference. (*See* Dkt. # 68).